ILENE SCHWARZBACH et al., Plaintiffs-Appellees, v. THE CITY OF HIGHLAND PARK et al., Defendants-Appellants.

Second District   No. 79-93

Opinion filed April 3, 1980.—Rehearing denied May 11, 1980.

Audrey Harris and Thomas H. Compere, Corporation Counsel, and Berle L. Schwartz, all of Highland Park, for appellants.

Russell L. Engber, of Highland Park, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The city appeals from a declaratory judgment which found that a special service area (Ill. Rev. Stat. 1977, ch. 120, pars. 1301-1311) was properly created, but which enjoined the city from passing ordinances for the issuance of bonds or the levy of annual taxes for special services without holding further hearings. The city has appealed, contending that the trial court erred in raising *sua sponte* the question of inadequate notice, and in concluding that the notices were inadequate, requiring further hearings.

The city council adopted an ordinance proposing establishment of the service area for the central business district in Highland Park on November 14, 1977, and scheduled a hearing for December 13, 1977. Notice of the hearing was sent to all persons in whose name the general taxes for the last preceding year were paid on each parcel of land lying within the proposed special service area on December 1, 1977, and newspaper notice of the hearing was published on November 24, 1977.

On December 13, 1977, the plaintiffs appeared at the hearing and objected to the proposal. Their objections were not specifically answered at that meeting but were in effect overruled by the city's subsequent actions.

Within 60 days from the adoption of the ordinance proposing the establishment of the special service area, objections were filed by both electors and property owners, which the city stipulated should be treated as a petition under section 9 of the special services act (Ill. Rev. Stat. 1977, ch. 120, par. 1309). At least 51 percent of the electors residing within the special service area and at least 51 percent of the owners of record of the land included within the boundaries of the special service area were required to defeat the proposal. Analysis of the objections showed them to be less than the 51 percent required.

On March 13, 1978, the city adopted an ordinance establishing the special service area. Plaintiffs filed suit on March 31, 1978, alleging, in general, that the notices were improperly sent, that the form of notice deprived them of due process, that a sufficient number of objections in each category was filed, and that the city erred in determining the number of objections filed by the electors and property owners. The complaint prayed for an injunction to prevent implementation of the ordinance of March 13, 1978.

The trial court upheld the establishment of the special service area, finding that the required legal notice of hearing for the establishment of the area had been given; concluded that the notice did not deprive plaintiffs of due process; and also that plaintiffs had failed to secure the

objections of at least 51 percent of the owners of record as required by section 9 of the act.

However, the court also found that the ordinances proposing and establishing the special service area included only the maximum amount of bonds which could be issued and only the maximum rate of taxes which could be extended, and that those portions of the ordinance of March 13, 1978, were illegal and invalid for failing to comply with various requirements of the act. Therefore, the court enjoined the city from issuing bonds or levying taxes to support the special services for the area until compliance with the indicated provisions. The court noted that it found the following errors in the procedure employed by the city: (1) that notice should have gone to all interested persons owning taxable personalty; (2) that the notice, in addition to stating the maximum annual levy and the maximum number of years that the tax will be levied, should also have stated the exact amount of the first year's levy and the purpose to which it will be put; (3) that the notice should also have indicated whether the tax will be levied against real property only, against real property and personalty, or against personal property alone; and (4) that the notice, in addition to stating the maximum amount of the bonds proposed to be issued, the maximum period of time over which they will be retired, and the maximum interest rates the bonds shall bear, should also have stated that the city then proposed to issue a definite number of bonds in a definite amount at a definite interest rate.

The trial court denied the post-trial motion of the city and this appeal followed. The plaintiffs have filed no notice of appeal or cross-appeal.

The city first argues that the issues dealing with faulty notice were neither pleaded nor proved, and thus that the trial court had no authority to enjoin it from levying bonds and taxes following the finding that there were less than the 51 percent of the statutory objectors required to veto the project. The pleading makes a general allegation that the notice "was inadequate and insufficient" and therefore deprived plaintiffs of due process. In addition, several objections to the form of the notice were pleaded, although these specific objections were overruled and were not included in those which the court relied upon. However, the proof at the trial did not clearly raise the issue of the sufficiency of the notice for the levy or the bond issue, nor of the need to elect between taxing of personal property and real property, nor whether specific tax and bond plans must be formulated at the time of the hearing. The vast majority of proof at trial contested only the question of the formation of the unit. The issues relied upon by the court were introduced by it on the basis of its reading of the statute, but its findings may be tested on review by applying the statute to the notice which is in the record.

■■■ The trial court has a right to render findings on issues which have been formed by the record of the trial even if they are not formally raised in the pleadings. (See *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 463.) Further, an objection that an issue was not raised in the pleadings may be waived by the conduct of the parties at trial. (117 Ill. App. 2d 452, 463.) In this instance the trial court, after announcing its decision, offered the city ample time to raise legal arguments on the issues. Defendant's counsel, however, indicated that it intended to "go through the procedure again" when it actually levied the taxes or issued the bonds. Although the city has now withdrawn from that position, claiming that it was stated hastily in error and in response to its surprise at the *sua sponte* action of the judge, its conduct, together with other matters in the record, sufficiently sustain the action of the trial court in considering whether the notice complied with due process.

The issue of the sufficiency of a notice is basically one of statutory construction. The statute provides, as applicable:

"Taxes may be levied or imposed by the municipality or county in the special service area at a rate or amount of tax sufficient to produce revenues required to provide such special services: provided, however, that if the tax is upon property, all taxable personal property may be excluded from such taxation at the option of the municipality or county. Prior to the first levy of taxes in such special service area notice shall be given and hearing shall be held pursuant to the provisions of Sections 5 and 6. For purposes of this Section the notice shall include:

(1) The time and place of hearing;

(2) The boundaries of the area by legal description and by street location, where possible;

(3) A notification that all interested persons owning real estate or taxable personalty located within the special service area will be given an opportunity to be heard at the hearing regarding such tax levy and an opportunity to file objections to the amount of the tax levy if the tax is a tax upon such property; and

(4) The maximum rate of taxes to be extended in any year and may include a maximum number of years said taxes will be levied.

After the first levy, taxes may be extended against the special service area for the services specified without additional hearings, provided said taxes shall not exceed the rate specified in the notice and if a maximum number of years is specified in the notice, the taxes shall not be extended for a longer period. * * *" Ill. Rev. Stat. 1977, ch. 120, par. 1304.

"* * * Notice of the hearing shall be given by publication and mailing. Notice by publication shall be given by publication at

least once not less than 15 days prior to the hearing in a newspaper of general circulation within the municipality or county. Notice by mailing shall be given by depositing said notice in the United States mails addressed to the person or persons in whose name the general taxes for the last preceding year were paid on each lot, block, tract or parcel of land lying within the special service area. * * *" Ill. Rev. Stat. 1977, ch. 120, par. 1305.

"* * * Prior to the issuance of such bonds, notice shall be given and a hearing shall be held pursuant to the provisions of Sections 5 and 6 hereof. For purposes of this Section a notice shall include:

(1) The time and place of hearing;

(2) The boundaries of the area by legal description and by street location, where possible;

(3) A notification that all interested persons owning real estate or taxable personalty located within the special service area will be given an opportunity to be heard at the hearing regarding the issuance of such bonds and an opportunity to file objections to the issuance of such bonds if the tax to retire such bonds is to be a tax upon such property; and

(4) The maximum amount of bonds proposed to be issued, the maximum period of time over which said bonds shall be retired, and the maximum interest rate said bonds shall bear. * * *" Ill. Rev. Stat. 1977, ch. 120, par. 1307.

The city's notice, after setting the December 13, 1977, date and describing the territory, included:

"All persons *owning taxable property* in the area and all other persons affected by the formation of Highland Park Special Service Area Number 7 will be given an opportunity to be heard * * *

At the hearing, there will be considered the borrowing of an amount not to exceed $1,000,000 to be evidenced by full faith and credit bonds payable from a tax levied without limits as to rate or amount on all of the taxable property located within said area, the proceeds of which shall be used to pay part of the cost of installing lighting, street furniture and other equipment, parking facilities, sidewalks, street median, landscaping, and related facilities and equipment in said Special Service Area. Said bonds are to be retired over not to exceed a twenty (20) year period and to bear interest at a rate of not to exceed seven (7%) per cent per annum. Said bonds shall be retired by the levy of a direct tax to pay the interest on such bonds as it falls due and to discharge the principal thereof at maturity. Said Tax is to be levied upon *all taxable property* within the proposed special service area.

At the hearing there also will be considered the levy from time to time, as determined by the City Council, of an annual tax for providing maintenance and special services in Special Service Area Number 7, provided however, that no such levy may be made in any year in which the levy for this purpose when combined with the levy required to meet the annual payments of principal and interest on the bonds proposed to be issued hereunder hereinafter described will exceed an annual rate of $1.20 per one hundred dollars of assessed valuation. Said tax to be levied for a maximum of twenty (20) years. The rate limit contained in this paragraph shall in no manner be construed as a limit on the rate required to pay the annual installment of principal and interest on the bonds hereinafter described. [Making further provisions for written objections and giving notice that 51 percent of electors and owners of record of land within the boundaries of the area could prevent the creation of the area and the levy of taxes.]" (Emphasis added.)

It appears to be the legislative intention to provide a less complicated method for municipalities to create and finance necessary local improvements without showing a special benefit to property taxes as required under local improvement procedures. (*Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, 353.) The lesser procedural safeguards can be said not to offend due process in view of the veto power given to objectors under section 9 of the special services act. This veto power has been upheld over a claim that it is an unconstitutional delegation of taxing power. *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 202.

■ However, before a tax becomes irrevocably fixed as a charge upon property, the property owner must have an opportunity to be heard and notice of that opportunity appropriate to the circumstances. (*Griffin v. County of Cook* (1938), 369 Ill. 380, 391; *People ex rel. Stuckart v. Arnold Bros.* (1917), 282 Ill. 305, 307.) It follows that the property owner is entitled to notice which can be plainly understood in the sense that it conveys the information appropriate to form the taxpayer's decision to object or refrain from objecting. *Griffin v. County of Cook* (1938), 369 Ill. 380, 392. See also *In re Nissan Motor Corp. Antitrust Litigation* (5th Cir. 1977), 552 F.2d 1088, 1103.

■ We conclude that the notice given here was not appropriate to the combined proceedings which both formed the special service area and purported to advise the extent of the owners' and electors' obligation.

Section 4(3) requires a notification that all interested persons "owning real estate or taxable personalty" located within the special service area be given an opportunity to be heard at the hearing and the right to file objections to the amount of the tax levy if the tax is a tax upon their

property. Similarly section 7 contains a notice provision for bond issues requiring notification to "all interested persons owning real estate or taxable personalty located within the special service area." The notice sent in this case was directed at all persons owning "taxable property in the area." We cannot conclude that this is the same as notifying persons "owning real estate or taxable personalty" as specified in sections 4 and 7 of the act. In the context of the statutory requirement giving notice to persons owning "taxable property" is inherently ambiguous. The city did not specifically include in its notice an election provided in the act for excluding taxable personal property. (Ill. Rev. Stat. 1977, ch. 120, par. 1304.) "Taxable property" could well be interpreted to mean taxable real property, with the result that those owning taxable personalty may have disregarded the notice. Others may have interpreted it, as the city now claims, to include both real and personal property and not have objected because they felt that the expense of the special services would be spread over a greater tax base. The fact that personal property taxes were by constitutional provision to be abolished on January 1, 1979, less than a year after the tax was levied (see Ill. Const. 1970, art. IX, §5(c)) may also have contributed to the confusion of one receiving the notice.

The plaintiffs have not challenged the fact that the notice combined the matter of the creation of the service area with the financing of the project by bonds, and the levy of annual taxes to retire the bonds. We do not therefor address that issue in the context of a constitutional challenge. We are also aware that in two cases in which the act before us has been reviewed in appellate courts, there apparently has been a combined hearing with no objection. (See *Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, and *Hiken Furniture Co. v. City of Belleville* (1977), 53 Ill. App. 3d 306.) We do consider that the combined hearing does have a bearing on the appropriateness of the notice that was given and the nature of the proceedings. The great emphasis in the hearings was upon the creation of the district. Even counsel for the city apparently had some confusion about the necessity for further hearings to provide a forum for property owners to object to the amount of the bonds to be authorized and the extent of the tax levies. It would surely follow that the property owners would share the same confusion. The notice could have avoided this possibility by clearly setting forth that the creation of the service area would first be the subject of objection and that there would be a further opportunity to object to the bonding provision and tax levy.

█ We therefore agree with the trial court that the city be enjoined from passing ordinances for the issuance of bonds or the levy of taxes without holding further hearings. Inasmuch as the cause must be remanded for that purpose, we address several other findings which may be relevant to the further proceedings. The trial court concluded that in addition to

stating the maximum rate of taxes to be levied in any one year, the notice must also include the purpose to which it will be put, the number of bonds to be issued and the interest rate. We do not find that requirement in the statute. Section 4 states only that the notice must include the maximum rate of taxes to be levied in one year, and, optionally, the maximum number of years in which the levy is to be made. (Ill. Rev. Stat. 1977, ch. 120, par. 1304.) Section 7 requires only that the notice include the maximum amount of bonds proposed to be issued, the maximum period of time over which they are to be retired, and the maximum interest rate said bonds shall bear. (Ill. Rev. Stat. 1977, ch. 120, par. 1307.) More specificity is not required by the statute and is inconsistent with the greater flexibility intended by the legislature for the special service area taxation. Therefore, the city's previous notice is sufficient in these areas.

We affirm the judgment and remand the case with directions that there be further hearings limited to the right of owners of real estate and electors in the service area to object to the issuance of bonds in the amount specified and the levy of taxes in the manner specified in section 9 of the act. Ill. Rev. Stat. 1977, ch. 120, par. 1309.

Affirmed and remanded with directions.

WOODWARD and NASH, JJ., concur.